UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACQUELINE YOUNGBLOOD,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 13-CV-209-JPS

ORDER

---

The plaintiff, Jacqueline Youngblood, has not been treated kindly by the Social Security Administration, nor has she had an easy life. In recent years, she has been diagnosed with an aggressive form of breast cancer, which required a mastectomy and chemotherapy treatment. (*See, e.g.*, Tr. 176, 195, 700). She also suffers from various other physical impairments, including degenerative joint disease in her feet and pain in much of her lower body and shoulder. (*See, e.g.* Tr. 134, 144, 146–49, 163–64). In addition to those physical problems, Ms. Youngblood also has a relatively low IQ score, based on tests performed by several doctors, which falls within the diagnosis range of mental retardation. (Tr. 247–253, 260, 264, 274–77).

1.    PROCEDURAL BACKGROUND

Given these myriad problems, Ms. Youngblood filed an application for disability and supplemental security benefits on September 1, 2006. Thus began her odyssey: an all-too-common slog through the Social Security administrative process. After having her claims denied initially, Ms. Youngblood appeared before ALJ Margaret O'Grady (the ALJ) for a hearing to determine whether Ms. Youngblood is, in fact, disabled. (Tr. 428–439). At that first hearing, the ALJ determined that Ms. Youngblood *had been* disabled

for the period during which she was receiving surgery and chemotherapy treatment, but otherwise found that Ms. Youngblood is not disabled as a result of her mental or physical limitations. (Tr. 439). Ms. Youngblood requested review of the decision by the Social Security Appeals Council (the Appeals Council). (Tr. 441–42). That review took nearly a *year and a half* to complete, after which time the Appeals Council reversed the ALJ's decision due to the fact that the decision may have been based on an incomplete record, as the ALJ was testing a new computer system at the time she reviewed Ms. Youngblood's file. (Tr. 441–42). Thus, the ALJ got a second opportunity to review Ms. Youngblood's claim and again found that Ms. Youngblood is not disabled as a result of her mental or physical limitations. (Tr. 18–25). Ms. Youngblood appealed that newer decision to the Appeals Council, but this time the Appeals Council affirmed the ALJ's decision. (Tr. 7).

2.   DISCUSSION

Ms. Youngblood filed this case seeking review of the ALJ's decision. (Docket #1). She filed a brief asserting that the ALJ erred in multiple ways in reaching her determination that Ms. Youngblood's physical and mental impairments do not rise to the level of a disability. (Docket #15). The Commissioner apparently agrees that the ALJ erred: on August 30, 2013, she filed a motion to remand this case for further proceedings. (Docket #16).

The issue now is whether the Court should remand the case for further proceedings, as the Commissioner requests, or whether the Court should go further and remand the case with an order that Ms. Youngblood actually be awarded benefits. Ms. Youngblood argues that the latter option is the only correct remedy, here. (*See, e.g.*, Docket #15, at 25; #18).

### 2.1 Forms of Relief that the Court May Award

The Court begins its analysis by noting that Ms. Youngblood vigorously attacks the Commissioner's decision to move for remand of the case, instead of filing a brief in opposition to Ms. Youngblood's opening brief, requesting an award of benefits. (Docket #18, at 2–4). That is rightly so. Without a doubt, the Commissioner's motion to remand is rather perplexing. It seeks remand of this matter under Sentence Four of 42 U.S.C. § 405(g) in order to allow the Commissioner to obtain additional evidence, after which the ALJ would re-evaluate Ms. Youngblood's disability claim. (Docket #16; #17, at 2). The problem with that motion is that it is not authorized under the sentence that the Commissioner has cited.

The text of Sentence Four of 42 U.S.C. § 405(g) allows the Court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Under this sentence, the Court has the power to enter a final judgment terminating the case, by either "affirming, modifying, or reversing," the Commissioner's decision. 42 U.S.C. § 405(g); *Curtis v. Shalala*, 12 F.3d 97, 101 (7th Cir. 1993) ("Remands ordered in Social Security cases pursuant to sentence four of 42 U.S.C. § 405(g) are final judgments that terminate the judicial review proceedings before the district court."). Any such judgment, however, must be entered "upon the pleadings and transcript of the record." In other words, in a Sentence Four remand, the Court's review of evidence is limited to that which was submitted to the ALJ. The Court can affirm, modify, or reverse the ALJ's decision *only on the evidentiary record the ALJ considered*, and may remand the cause for a rehearing. Those are the only potential outcomes

under Sentence Four. Put most simply, Sentence Four does not contemplate remands seeking additional evidence.

But that is not the end of the analysis because Sentence Six of 42 U.S.C. § 405(g) *does* allow the Court to remand a case for additional evidence gathering. Sentence Six, however, places some additional strictures on the Court's ability to offer that form of relief. Specifically, Sentence Six provides that

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

That sentence, also known as Sentence Six, is extremely confusing. But, distilled to its essentials, provides for two separate situations in which the Court may order a remand pursuant to Sentence Six: first, where the Commissioner "requests a remand before answering the complaint"; or, second, "where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297, n.2 (1993) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100, and n.2 (1991)); *see also Curtis v. Shalala*, 12 F.3d at 100, n.3 (7th Cir. 1993) ("Sentence six also provides for remands at the request of the" Commissioner).

The law surrounding the latter of those situations is fairly well-developed and, therefore, the Court addresses it first. In *Melkonyan*, the Supreme Court clarified that the latter portion of Sentence Six gives district

Page 4 of 16

Case 2:13-cv-00209-JPS   Filed 10/04/13   Page 4 of 16   Document 21

courts the power to "remand in light of additional evidence without making any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier"; the Supreme Court also made clear that, in Sentence Six remands, the district court must retain jurisdiction over the action until the ALJ has taken steps in light of the additional evidence. 501 U.S. 89, 99–102; *see also Travis v. Sullivan*, 985 F.2d 919, 923–24 (clarifying Sentence Six's requirements under *Melkonyan*). In other words, the Court may remand any case at any time under the latter half of Sentence Six, provided that: (1) there is new, material evidence; (2) it finds that there was good cause for the Commissioner's failure to incorporate that evidence in the prior proceedings; and (3) it retains jurisdiction over the case. *Melkonyan*, 501 U.S. at 99–102.

The law on the first half of Sentence Six, on the other hand, is not as well-developed. Typically, the Commissioner uses that portion of Sentence Six to seek remand when there are (for lack of a better term) "technical" issues with the record, such as portions of the claim file or the hearing recording being missing. *See, e.g.*, *Dudley v. Astrue*, 246 Fed. App'x 249, 252 (5th Cir. 2007); *Dempsey v. Astrue*, 2010 WL 827293 (W.D.N.Y. 2010); *Rankhorn v. Astrue*, 2007 WL 781876 (E.D. Tenn. Mar. 12, 2007); *Farstad v. Barnhart*, No. A4-04-19, 2004 WL 1175701, * 1 (D.N.D. May 25, 2004); *Hudson v. Barnhart*, 2003 WL 22290210 (N. D. Cal. 2003); and *Shank v. Barnhart*, 2002 WL 1839163 (E.D. Pa. 2002); *Gamble v. Apfel*, 2001 WL 102344 (S.D. Ala. 2001); *Flores v. Commissioner of Social Sec.*, 2001 WL 286732 (S.D.N.Y. 2001). This reading also finds support in the legislative history. H.R.Rep. No. 944, 96th Cong., 2d Sess. 59 (1980), as reprinted in 1980 U.S.C.C.A.N. 1392, 1407 ("Where for example, the tape recording of the claimant's oral hearing is lost or inaudible, or cannot

be otherwise transcribed, or where the claimant's files cannot be located or are incomplete, good cause would exist to remand the claim to the Secretary for appropriate action to produce a record."). What is clear is that there must be "good cause" to remand the case under this portion of Sentence Six, and the Court should "give due deference to the agency's determination of whether it has 'good cause' to reopen its decision." *Doctors Nursing & Rehabilitation Center v. Sebelius*, 613 F.3d 672, 680–81 (7th Cir. 2010) (citing *Dudley*, 246 Fed. App'x at 251).

In either of the two Sentence Six situations, the Court retains jurisdiction and remands to the ALJ for further evidence-gathering or reconstruction of the record; the Court does not, however, "rule in any way as to the correctness of the administrative determination." *Melkonyan*, 501 U.S. at 98. Instead, it allows the evidence-gathering or reconstruction to occur, after which time the ALJ renders a decision based on the amended record. The Court, still holding jurisdiction, would then review that new decision.

So, this is the menu of choices the Court has, in terms of what types of remand it may grant:

(1) remand, addressing the merits but limiting the decision to the record, and relinquishing jurisdiction, pursuant to Sentence Four;

(2) remand, not addressing the merits, to allow the record to be corrected, retaining jurisdiction in the interim, pursuant to the first half of Sentence Six; or

(3) remand, not addressing the merits, to allow the collection of additional evidence, retaining jurisdiction in the interim, pursuant to the second half of Sentence Six.

But, as implied above, that is not all that the Court can do. Indeed, it also has the power to reverse the ALJ's decision without remand, in essence finding on the record before it that the plaintiff is disabled. *See, e.g.*, 42 U.S.C. § 405(g) (Sentence Four); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). The Court should do so "only if all factual issues have been resolved and the record supports a finding of disability." *Id.*, at 356 (citing *Campbell v. Shalala* 988 F.2d 741, 744 (7th Cir. 1993); *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir. 1992); *Woody v. Sec'y of Health and Human Serv.*, 859 F.2d 1156, 1162–63 (3d Cir 1988)).

Ms. Youngblood clearly requests this latter form of relief, seeking to have the Court find that she is disabled. The Commissioner, on the other hand, seeks some form of remand, but does not make clear exactly which form.

2.2     Commissioner's Motion for Remand

With this background in mind, the Court turns to unraveling the dispute between the parties over which form of relief is appropriate, here.

The first part of doing so requires the Court to divine the precise type of relief sought by the Commissioner.[1] The confusion on this point stems from the fact that she has requested relief pursuant to Sentence Four, but seeks to gather additional evidence, which seems to fall under the latter half of Sentence Six. However, she also filed a motion to remand prior to filing a responsive pleading, which tends to indicate that she seeks remand under the

---

[1] As a practical matter, the Court notes that it must deny the Commissioner's motion. Given the fact that the Commissioner seeks relief that the Court cannot possibly award (remand for further evidence-gathering under Sentence Four, which is not sanctioned by 42 U.S.C. § 405(g), as the Court will discuss further), the Court must deny her motion.

first half of Sentence Six. The Court will examine each of these options to determine which one the Commissioner actually seeks.

She almost certainly is not seeking a remand under Sentence Four. In fact, she acknowledges in a sub-heading that "The Record is Equivocal on Listing 12.05C." (Docket #17, at 5). Assuming that to be true (and, since the Court is attempting to divine what form of relief the Commissioner is seeking, that is precisely what it will do for this purpose), there would be no purpose for a remand under Sentence Four. Remands under Sentence Four are on the record, as already established below. Therefore, if the Court were to remand this case pursuant to Sentence Four, it would necessarily have to do so on the record. And, if that record is "equivocal," as the Commissioner asserts, then there would be practically no benefit to a remand. Thus, it is clear that the Commissioner is not seeking remand under Sentence Four.

Similarly, the Commissioner cannot be seeking relief under the first half of Sentence Six, because she does not assert that there is any error inherent in the record. She does not allege, for instance, that a portion of the transcript is missing or even that there is some clear error therein. Thus, even though she filed a motion to remand before filing a responsive pleading, the Court cannot find the sort of "good cause" that Courts traditionally look for before remanding cases under the first half of Sentence Six. Moreover, the Commissioner certainly cannot, through a motion alone, "disrupt federal jurisdiction" and remand this case without leave of Court. *Doctors Nursing & Rehabilitation Center*, 613 F.3d at 677 (noting, in regards to the first half of Sentence Six, that "[w]hile this provision addresses only the court's power to remand, and not the agency's own authority to reopen its proceedings, it assumes that an agency may not disrupt federal jurisdiction on its own.").

Page 8 of 16

Case 2:13-cv-00209-JPS   Filed 10/04/13   Page 8 of 16   Document 21

Rather, the latter half of Sentence Six seems to be the portion of 42 U.S.C. § 405(g) that would be most likely to apply, here. The Commissioner notes that, despite Ms. Youngblood's low IQ-test scores, much of the other evidence could support a finding that she is not mentally retarded. (Docket #17, at 6–8). She also points out that Ms. Youngblood took the relevant IQ test while undergoing chemotherapy, which has been found to negatively affect individuals' cognitive abilities. (Docket #17, at 8–10, and n.3). From those arguments, the Court can extrapolate that the Commissioner is seeking additional evidence in the form of a new IQ test, which the Commissioner would then submit to the ALJ for a new decision on remand. That request most closely tracks a request for remand under the latter half of Sentence Six. Thus, the Court finds that the Commissioner is seeking relief under the latter half of Sentence Six.

### 2.3 Denial of the Commissioner's Motion

Having found that the Commissioner's motion seeks relief under the latter half of Sentence Six, the Court must next turn to evaluate whether that provision allows the Court to grant the Commissioner's request to remand the case for further-evidence gathering. It does not.

The latter half of Sentence Six allows for remand when the Court finds that there is evidence that: (1) is new; (2) is material; and (3) for good cause was not presented to the ALJ. *See, e.g.* 42 U.S.C. § 405(g); *Schmidt v. Barnhart*, 395 F.3d 737, 741–42 (7th Cir. 2005). "Evidence is 'new' if it was 'not in existence or available'" to the ALJ during the administrative proceeding. *Schmidt*, 395 F.3d at 742 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). "Evidence is material if there is a reasonable probability that its consideration would have changed the ALJ's decision." *Gossett v. Colvin*, ---

Fed. App'x ----, 2013 WL 2993545, at*4 (7th Cir. June 13, 2013) (citing *Schmidt*, 395 F.3d at 742; *Perkins*, 107 F.3d at 1296). The Seventh Circuit has found that "good cause" *does not* exist where a party "could and should have" obtained evidence and presented it to the ALJ in the prior proceeding. *Cromer v. Apfel*, 234 F.3d 1272 (7th Cir. 2000) (unpublished decision, citing *Campbell*, 988 F.2d at 745, n.2)).

Sentence Six's requirements are not met, here. To begin, the Court does not believe that the Commissioner has actually identified any new evidence that she could present to the ALJ on remand. Rather, the Commissioner has identified only the speculative existence of new evidence, as opposed to evidence, itself. The Commissioner suggests that, on remand, a new IQ test could be performed, and that Ms. Youngblood's results may now be better, because she is no longer undergoing chemotherapy. (*See, e.g.*, Docket #17, at 8–10). Mind you, the Commissioner does not have any new IQ figures; she does not even have evidence that Ms. Youngblood's first IQ test results were falsely lowered by her undergoing chemotherapy. Rather, she has only a few studies showing that chemotherapy *may* negatively affect cognitive abilities. (*See* Docket #17, at 9, n. 3). Thus, it is very difficult to find that the Commissioner has new evidence that she seeks to introduce on remand. However, to the extent the Court were to determine that the Commissioner was seeking to introduce evidence on remand, the Court would still have difficulty finding that evidence to be "new." In reality, at least one of the studies upon which the Commissioner relies to show that Ms. Youngblood's IQ scores may have been negatively affected by chemotherapy was in existence throughout the time that Ms. Youngblood underwent her IQ test and appeared before the ALJ for a hearing. (Docket #17, at 9, n.3

(citing a study from 2004)). In other words, while a new IQ test would produce new evidence, the arguable basis for the Court's granting a motion to remand for gathering of that evidence is not actually new. There was at least one study in existence throughout the relevant time period, which supports the Commissioner's argument; the Court wonders why that study is only now—after two ALJ hearings based upon the first IQ test—being used as a basis to request a new IQ test. Certainly, it was available to the ALJ during the administrative proceeding, and therefore cannot be deemed as new. *Schmidt*, 395 F.3d at 742. For these reasons, the Court cannot find that the Commissioner is seeking to introduce new evidence. Accordingly, Sentence Six remand would not be appropriate.

The Court also wishes to point out that the remaining two requirements for a Sentence Six remand also are not satisfied. The proffered evidence (if it can be called that) is not material, because it likely would not change the ALJ's decision. *Gossett*, 2013 WL 2993545, at*4 (citing *Schmidt*, 395 F.3d at 742; *Perkins*, 107 F.3d at 1296). The ALJ, of course, found that Ms. Youngblood is not disabled. The Commissioner now seeks additional evidence that would actually *support* that position, as opposed to changing it. This suggests that the evidence is not material under the Seventh Circuit's definition. It also suggests that the Commissioner envisions a high likelihood of a disability finding on remand, if the ALJ must accept the record as it currently stands. In other words, the Commissioner must know that it is extremely likely that she will have to award benefits on remand, unless the Court permits her a do-over on Ms. Youngblood's IQ test. Which brings the Court to its final point on this matter: there is not good cause to allow a new test. As the Court mentioned, studies dating back to at least 2004 show the

negative cognitive effects of chemotherapy. Thus, the Commissioner had reason to know of the reasons that Ms. Youngblood's IQ test scores may not have been accurate at that time. There is no reason that the Commissioner should have waited until now to seek a re-test, after a good deal of time and money has been spent in ALJ hearings and decisions. To be quite candid, this request gives every appearance to be nothing more than a desperate attempt to get a second bite at the apple. Thus, the Court also finds that the second and third requirements for a Sentence Six remand are not present here.

Having found that the Commissioner has not established *any* of the requirements for a remand under the second half of Sentence Six, the Court is obliged to hold that the Commissioner is not entitled to a remand for additional evidence gathering.

Accordingly, the Court has found that neither part of Sentence Six applies to this situation, and must conclude that a remand under Sentence Six would be inappropriate. The Court has also determined that remand under Sentence Four does not allow for additional evidence-gathering. Therefore, there is no possible basis on which the Court could grant the Commissioner's motion for remand for additional evidence-gathering, and the Court must accordingly deny that motion.

2.4   Remand Pursuant to Sentence Four

That leaves the Court with two options:

(1)   it can take the route requested by Ms. Youngblood and find that she is disabled based upon the record before it; or

(2)   it can remand the case for further proceedings—also on the record before it, and without allowance for any additional evidence-gathering—pursuant to Sentence Four, even though this is not the precise type of relief that either party requests.

This is a difficult decision for the Court to make. On one hand, Ms. Youngblood's process through the Social Security system has been a difficult one; the Commissioner has acknowledged that the ALJ's decision was flawed; and the Court finds it likely that, on the record before it (in conjunction with the Commissioner's vigorous attempt to get a do-over on the IQ test), Ms. Youngblood likely will be found disabled on remand. On the other hand, "obduracy alone [cannot] ever warrant an award of benefits," *Briscoe*, 425 F.3d at 356, and the Court is generally reluctant to substitute its own judgment for that of an ALJ, who is in the best position to make disability determinations, based upon experience with the processes in place and familiarity with the record and the claimant through a hearing.

The evidentiary bar at which an award of benefits is appropriate is very high: the Court must find that "all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356 (citing *Campbell*, 988 F.2d at 744; *Micus*, 979 F.2d at 609; *Woody*, 859 F.2d at 1162).

That stringent standard is not met, here. While the record, itself, will not be supplemented with additional IQ testing evidence on remand, there are still factual issues that are best resolved by an ALJ after an evidentiary hearing. Listing 12.05C describes a disabling form of mental retardation. The parties seem to agree that the issue of whether Ms. Youngblood is disabled turns largely upon whether the ALJ finds that Listing 12.05C is met. Without a doubt, Ms. Youngblood's impairments seem to closely track Listing 12.05C's requirements. Listing 12.05C requires:

(1) subaverage intellectual functioning with adaptive functioning deficits;

(2) evidence that the impairment initially manifested during the developmental period (before age 22); and

>            (3)    a valid IQ score of 60 through 70, along with either:
>
>                   (a)    another physical or mental impairment imposing work-
>                          related functioning limitations; or
>
>                   (b)    two of the following:
>
>                          (i)     marked daily living restrictions;
>                          (ii)    marked difficulties in social functioning;
>                          (iii)   marked difficulties in concentration, persistence,
>                                  or pace; or
>                          (iv)    repeated episodes of extended decompensation.

20 C.F.R. Pt. 404, Subpt. P, App. 1. This is an extremely fact-bound determination, which may even require substantial credibility determinations. For instance, the ALJ, on remand, may need to take hearing testimony to determine whether Ms. Youngblood's alleged impairment results in adaptive functioning deficits or manifested before age 22. The ALJ may also have to determine whether Ms. Youngblood has a physical or mental impairment, aside from her low IQ score, that imposes work-related functioning limitations. While Ms. Youngblood argues that the record contains evidence that would establish those requirements—and, without a doubt, there is evidence supporting her contentions in the record—that does not mean that "all factual issues have been resolved." Instead, the Court believes that an ALJ is in the best position to examine the factual record and decide whether that supportive evidence conclusively establishes that Listing 12.05C's requirements are met. What is more, a credibility determination may be necessary to find that certain of Listing 12.05C's requirements are satisfied. *See, e.g.*, SSR 96-7p. In short, the Court does not believe that the Listing 12.05C analysis is quite so cut-and-dry, or that the evidence is quite so conclusive, as Ms. Youngblood asserts. Accordingly, a finding of disability would not be warranted.

Remand pursuant to Sentence Four is much more appropriate. Under that sentence, the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Given the parties' general agreement that the ALJ's decision was erroneous and the Court's further determination that factual issues remain unresolved by the record, the Court is obliged to reverse the ALJ's decision and remand this case for a rehearing.

3. CONCLUSION

For the reasons discussed above, the Court determines that it must deny the Commissioner's motion to remand this case for additional evidence gathering, and further is obliged to remand this case for rehearing under Sentence Four.

Finally, given the fact that the ALJ in this case has now twice heard Ms. Youngblood's claims, and both times entered an opinion in error, the Court urges the Commissioner to assign this case to a different ALJ on remand. The Court has no power to order that this be done, unless there appears clear evidence of bias (which is not the case here), but may nonetheless suggest re-assignment in cases like this one, where repeated ALJ errors cause the Court some concern over how it will be handled on remand. *See, e.g.*, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 2003) (citing *Travis v. Sullivan*, 985 F.2d 919, 923–24 (7th Cir. 1993); *Ventura v. Shalala*, 55 F.3d 900, 904–05 (3d Cir. 1995); *Briscoe*, 425 F.3d at 357; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Accordingly,

IT IS ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the opinion of the ALJ be and the same is hereby REVERSED and REMANDED for further proceedings consistent with this decision; and

IT IS FURTHER ORDERED that the Commissioner's motion to remand for additional evidence gathering (Docket #16) be and the same is hereby DENIED.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge