UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACQUELINE YOUNGBLOOD,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

                Defendant.

Case No. 13-CV-209-JPS

ORDER

On February 27, 2013, the plaintiff, Jacqueline Youngblood, filed her complaint in this case, appealing the decision of Administrative Law Judge Margaret O'Grady ("the ALJ"), which found Ms. Youngblood not disabled and, therefore, denied her request for Supplemental Security Income and Medicaid. (Docket #1). Ms. Youngblood filed a brief in support of her position, whereafter the Commissioner moved to remand the case for further proceedings. (Docket #15, #16). Ms. Youngblood responded to the Commissioner's motion arguing that, instead of remanding the case, the Court should find her disabled and order that she be awarded benefits. (Docket #18). This led to some confusion amongst the parties and the Court, as each attempted to make sense of how to proceed when the Commissioner, herself, was requesting remand. The Court issued an order reversing and remanding the case to the Commissioner, which it later vacated. (Docket #21, #31). It then requested additional briefing from the parties, which is now complete. (Docket #31, #32, #33, #34, #35).

The parties agree that the ALJ erred. In fact, as already mentioned, the Commissioner readily acknowledges that error and requests that the Court simply remand the case. (*E.g.* Docket #33, at 9–10). The Commissioner assures

the Court that, upon remand, the Appeals Council will refer the case to an ALJ to gather additional evidence, re-weigh the medical opinions, and re-evaluate whether Ms. Youngblood's impairments meet Listing 12.05. (Docket #33, at 9).[1] Ms. Youngblood, meanwhile, maintains that the Court must reverse and remand this case for an award of benefits. (*E.g.* Docket #32, at 8–9). She asserts that she meets every requirement of Listing 12.05C, that the record can support only that conclusion, and, therefore, that the Court must order that she be awarded benefits. (Docket #32, at 8–9).

Thus, rather than deciding whether the ALJ erred warranting a remand, as the Court is normally called upon to do in Social Security cases, the Court's task here is only to determine whether Ms. Youngblood so clearly satisfies Listing 12.05C that the Court should order that she be awarded benefits. In other words, the only issue at this point is whether an award of benefits or a remand for further proceedings is appropriate.

"An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). This is Ms. Youngblood's burden to establish. *Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011) (citing 20 C.F.R. § 404.1514; *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.

---

[1]This position is understandable, but begs the question: why, if the Commissioner and the Appeals Council are now so certain of ALJ error and the possibility of correcting the error on remand, did this case warrant an appeal? Couldn't the Appeals Council have identified the problems in the ALJ's opinion in the first instance, and remanded the case for an additional hearing at that juncture? Doing so would have spared the parties and the Court considerable resources. This is yet another demonstration of the dysfunctionality of the Social Security system, and the difficult situation that both the Commissioner and the Court all too often find themselves confronting when reviewing these cases.

1991)). Thus, to be entitled to the relief she requests, Ms. Youngblood must show that the record establishes only one supportable conclusion: that she meets every requirement of Listing 12.05C.

Listing 12.05C has four requirements: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins v. Astrue*, 226 F. App'x 600, 604-05 (7th Cir. 2007) (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)); *see also Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013). Ms. Youngblood must show that the record supports *each* of those requirements; failure to show even one means that the Court must remand this case for further proceedings.

The first two requirements—significantly subaverage intellectual functioning and deficits in adaptive functioning—are sometimes listed and addressed together, because both are taken from Listing 12.05's introductory language, whereas the remaining two requirements are specific to subsection C of Listing 12.05. *See, e.g.*, *Grasso v. Colvin*, No. 13-CV-112, 2013 WL 4046338 (E.D. Wis. Aug. 8, 2013) (describing Listing 12.05C as having three, rather than four, requirements by combining the first two requirements) (citing *Charette*, 508 F. App'x at 553; *Thackery v. Astrue*, No. 11–CV–1488, 2013 WL 1319595, at *3 (S.D. Ind. Mar. 29, 2013); *Lakes v. Astrue*, No. 11-CV-3592, 2013 WL 623022, at *9 (N.D. Ill. Feb. 19, 2013); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 894 (N.D. Ill. 2006)); *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012) (describing Listing 12.05's introductory paragraph, which includes both of

the first two requirements, as "Prong 1"); *Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006) (discussing Listing 12.05's introductory paragraph).

The Court will, therefore, address those two requirements together, although the majority of the Court's discussion focuses on the latter. In fact, the Court will assume that Ms. Youngblood has established that she suffers from significantly subaverage general intellectual functioning. There is a good deal of evidence that would support that conclusion. On the other hand, the question of whether there is evidence of deficits in adaptive functioning initially manifested before age 22 is much closer.

In support of her argument that the record clearly establishes adaptive functioning deficits prior to age 22, Ms. Youngblood cites to two portions of the record: Transcript Page 264 and Transcript Page 29.[2] (Docket #32, at 3 (citing Tr. 264, 29)). Transcript Page 264 is a page from a form titled "Psychiatric Review Technique," which was completed by Keith Bauer, Ph.D. (Tr. 260–273 ). The page, itself, includes only a checkbox of Listing 12.05, on which Dr. Bauer checked that Ms. Youngblood suffered from significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested prior to age 22 and had received a valid verbal, performance, or full scale IQ of 60 through 70. (Tr. 264). A majority of the remaining pages in this form are blank. (*See* Tr. 260–273). On some, Dr. Bauer checked boxes regarding Ms. Youngblood's degree of limitation. (*See* Tr. 11). However, other than Dr. Bauer's conclusions, there is nothing in the form in

---

[2]Despite the Court's request that Ms. Youngblood specifically address each of Listing 12.05C's requirements, she has practically ignored the first requirement. In her briefs, she either specifically mentions deficits in adaptive functioning manifesting prior to age 22 or discusses "mental retardation" broadly. Thus, at the very least, she pays short shrift to addressing the first requirement.

the way of discussion or evidence that Ms. Youngblood does, indeed, suffer from significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested prior to age 22. (Tr. 260–273).

Transcript Page 29 is not much different. It is a single-page form titled "Disability Determination and Transmittal," signed by Jack Spear, Ph.D., and Robert T. Callear, M.D., on which the doctors gave Ms. Youngblood a secondary diagnosis of "Mild Mental Retardation." (Tr. 29). Other than having checked other coded boxes and having provided an unrelated primary diagnosis, the doctors did not provide any other information on this form. (Tr. 29). There is nothing, whatsoever, that specifically addresses Ms. Youngblood's adaptive functioning deficits prior to age 22. (Tr. 29).[3]

In her reply, Ms. Youngblood adds to her discussion the opinion of William Nimmer, Ph.D., which she argues establishes her mental retardation. (*E.g.*, Docket #34, at 1–2 (citing Tr. 251–52)). And there is no doubt that Dr. Nimmer did diagnose Ms. Youngblood with mild mental retardation. (Tr. 251 (listing mild mental retardation at Axis II)). However, as with the opinion signed by Drs. Spear and Callear, this conclusion does not address, specifically, Ms. Youngblood's adaptive functioning deficits prior to age 22.

As the Court already mentioned, it is Ms. Youngblood's burden to establish that the record can support only one conclusion: that an award of benefits is appropriate. *See, e.g.*, *Briscoe*, 425 F.3d at 356 (quoting *Campbell*, 988 F.2d at 744); *Allord*, 631 F.3d at 416 (citing 20 C.F.R. § 404.1514; *Howell*, 950 F.2d at 348).

---

[3]Transcript Pages 27 and 28 both contain information similar to that found on Transcript Page 29.

Ms. Youngblood has not carried that burden. Most of the evidence that Ms. Youngblood relies on to establish the intellectual and adaptive functioning requirements—specifically the reports of Dr. Nimmer and Drs. Spear and Callear—do not fully support her contention. Indeed, at best, those reports establish mental retardation. That fact would certainly go to Ms. Youngblood's general intellectual functioning, but would not address her general adaptive functioning prior to age 22.

Meanwhile, her strongest piece of evidence—Dr. Bauer's report, in which he checked a box indicating that Ms. Youngblood suffers from significantly subaverage general intellectual functioning with adaptive functioning limitations manifested prior to age 22—while constituting a definite opinion, is not supported by significant evidence. Moreover, it is called into question by Dr. Nimmer's report, which includes substantial amounts of information that would support a conclusion that she does not suffer from adaptive functioning limitations that manifested prior to age 22.

There is no specific definition for the term "deficits in adaptive functioning," but the Seventh Circuit has found it to "denote[ ] inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). As the Seventh Circuit noted, "[i]f you cannot cope with those challenges, you are not going to be able to hold down a full-time job." *Id.* In *Novy*, the evidence established that the claimant lived on her own, cared for children, paid her bills, and avoided eviction, and therefore did not suffer from adaptive functioning deficits. *Id.* There is no precise legal test to determine whether deficits in adaptive functioning exist; rather, the factfinder must consider the claimant's ability "to cope with the challenges of daily life." *See Charette*, 508 F. App'x at 553 (citing *Novy*, 497 F.3d at 710).

Given the substantial information in Dr. Nimmer's report, there is evidence that could support a finding that Ms. Youngblood does not suffer from adaptive functioning deficits. In this regard, Dr. Nimmer's report establishes that: (1) Ms. Youngblood is happily married and has 8 children, a number of whom remain at home (Tr. 247); (2) she has worked in daycare settings (Tr. 248); (3) she wakes up at 6:00 a.m. on most days to send her children to school (Tr. 249); (4) prior to her cancer surgery, she was able to complete tasks and domestic duties at home, though she performs less now (Tr. 249); (5) she has a number of friends and acquaintances, many through church (Tr. 249); and (6) she will read limited materials, such as brochures and TV guides, though she struggles to read mail or perform basic math (Tr. 249). None of these items weighs firmly in favor of either the existence of or absence of adaptive functioning deficits. Certainly, they present a much more nuanced picture of Ms. Youngblood's abilities than the simple checking of a box, as performed by Dr. Bauer. At the very least, they create some uncertainty as to whether Ms. Youngblood actually suffers from adaptive functioning deficits.

Moreover, Dr. Nimmer's report includes evidence that Ms. Youngblood's adaptive functioning deficits did not manifest before age 22. Dr. Nimmer's report states that "Ms. Youngblood dropped out of school in the 11th grade following the difficulties noted above [referring to the early death of Ms. Youngblood's parents]. She was in regular education programming only, and had positive behavior relatedness to children and staff there." (Tr. 247–48). This seems to weigh strongly against a finding that Ms. Youngblood exhibited adaptive functioning deficits prior to age 22. There is now some question as to whether Ms. Youngblood was in special

education class—perhaps explained by the fact that "[s]he had speech therapy in grade school due to stuttering," (Tr. 248) although the Court is not certain—but even that fact, alone, would not be enough to establish the onset of adaptive functioning limitation prior to age 22. *See, e.g.*, *Hill v. Colvin*, No. 1:12-CV-01126, 2013 WL 5309915 (S.D. Ind. Sept. 23, 2013) (noting that special education placement may be for a variety of reasons, which may or may not include limitations in adaptive functioning; therefore, where plaintiff's only evidence of adaptive functioning deficits was evidence that he had participated in special education classes, but the plaintiff did not produce evidence of the nature of those classes—similar to the situation now before the Court—the ALJ was justified in finding Listing 12.05C had not been established). In recent years, she has attempted to obtain a GED, but has struggled due to a low reading level and potential dyslexia, but that does not establish Ms. Youngblood's abilities prior to age 22. (Tr. 248). Again, the evidence creates many questions—it could weigh either way.

Finally, to the extent that Ms. Youngblood relies very heavily on her low IQ scores, the Court must point out that, "[w]hile a qualifying IQ score may be *prima facie* evidence that an applicant suffers from 'significantly subaverage general intellectual functioning,' § 12.05, there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (citing *Novy*, 497 F.3d at 709; *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012); *Randall v. Astrue*, 570 F.3d 651, 656–61 (5th Cir. 2009); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009); *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *but see Markle v. Barnhart*, 324 F.3d 182, 187 (3rd Cir. 2003)).

For all of these reasons, the Court is obliged to find that Ms. Youngblood has not carried her burden. The record is, at the very least, equivocal on the issues of the existence of adaptive functioning deficits and whether any such deficits manifested prior to the time Ms. Youngblood reached the age of 22. Thus, even assuming that Ms. Youngblood suffers from significantly subaverage general intellectual functioning, she still cannot establish that she satisfies Listing 12.05C. Most certainly, she has not established that every factual issue has been resolved and that the record can support only her requested conclusion, as is required under *Briscoe*. 425 F.3d at 356 (quoting *Campbell*, 988 F.2d at 744).

The Court is, therefore, likewise required to remand this case, as requested by the Commissioner, for further proceedings. The Court need not address the remaining requirements, but points out that there is strong support in the record for the IQ test scores, seeing as every doctor found that Ms. Youngblood's IQ fell within the 60–70 range, making her mentally retarded or mildly mentally retarded. (Tr. 27–29, 251, 264). The Court still believes that the Commissioner's position regarding retesting due to chemotherapy is a weak one. When so many doctors have weighed in supporting Ms. Youngblood (even those affiliated with the Commissioner), the Court questions the benefit of additional testing. It still seems to be "a desperate attempt to get a second bite at the apple." (Docket #21, at 12). Meanwhile, the parties hardly mention the remaining requirement—the existence of a physical or other mental impairment imposing an additional and significant work-related limitation of function—likely because there is substantial evidence in its support. (Tr. 26 (ALJ finding multiple severe impairments, including "status post mastectomy of the left breast, secondary

to breast cancer, currently in remission, mild degenerative joint disease of the right foot, flat feet, complaints of musculoskeletal pain and obesity…")). But, because the Court must remand the case on the adaptive functioning deficits issue, these matters may still be open to further development, as the Commissioner requests.

The Court reiterates its suggestion to the Commissioner to re-assign this case on remand. (*See* Docket #21, at 15). There is no evidence of bias, but, seeing as the ALJ has now twice heard this case and erred both times, it seems that reassignment would be the wisest course; indeed, the Court may recommend so. *See, e.g., Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 2003) (citing *Travis v. Sullivan*, 985 F.2d 919, 923–24 (7th Cir. 1993); *Ventura v. Shalala*, 55 F.3d 900, 904–05 (3d Cir. 1995); *Briscoe*, 425 F.3d at 357; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Finally, the Court points out that it had some concern that this case may have been moot as a result of the Commissioner's offer to remand the case. A case becomes moot when the defendant offers to satisfy the plaintiff's entire demand. *See, e.g., Alswager v. Rocky Mountain Instrumental Labs., Inc.*, 474 F. App'x 482, 484 (7th Cir. 2012) (citing *Thorogood v. Sears, Roebuck & Co.*, 595 F.3d 750, 752–53 (7th Cir. 2010); *Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir. 2005); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991); *Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 878 (7th Cir. 1987); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004)). Ms. Youngblood's original demand could have been satisfied by the Commissioner's offer of remand. (*See* Compl. at 3). However, Ms. Youngblood having opposed that offer (Docket #18), the Court finds that the Commissioner's offer would not have satisfied Ms.

Youngblood's actual and entire demand, meaning that the case was not rendered moot, and the Court may enter an order resolving this case.

Accordingly,

IT IS ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), and in accordance with the Commissioner's request (Docket #33, #35) this case be and the same is hereby REMANDED for further proceedings; Ms. Youngblood's request that the Court order that she be awarded benefits (Docket #32, #34) be and the same is hereby DENIED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 4th day of March, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge